Next case is People v. Foxworth 514-0456. Once again, the court will state for the record that Justice Chapman will be having the briefs and listen to the oral argument, which is recorded. So make sure you speak up so that your arguments are taken down by the recording equipment. And please state your name for the record. Are both counsel ready to proceed? You may proceed. Thank you, Mr. Court. My name is Maggie Heim, and I represent the Defendant, Mr. Michael Foxworth. This is a direct appeal from a single conviction for aggravated criminal sexual abuse. Initially, Mr. Foxworth was charged with four counts. Two were alleged to have occurred during the same week in May of 2012, and two were alleged to have occurred in December of 2012 or January of 2013. The trial evidence consisted entirely of the complainant's accusations without any corroboration, and there were a number of different accusations given to different people over the course of a period of time. There was no physical evidence, there were no witnesses to the abuse, and there's never been a confession from Mr. Foxworth. Thus, the jury's task in this case was both simple and very complicated. They had to weigh Kenneth's credibility based on her multiple times of telling the story and weigh it against the reasonable doubt standard. And after eight hours of deliberation, the jury ended up quitting on two counts. They could not reach a conclusion, and they hung on one count, and they convicted on the count that is on appeal today. Now, this appeal raises three main errors, which all undermine the jury's work, such that this court should reverse to ensure that there's a fair trial. The first is a 431B admonishment error, and the problem is that the record was left unclear on whether jurors understood the four foundational principles of criminal law, particularly including the right not to testify and its scope. The second is that the prosecutor used one year to preview and argue the state's theory of MF's credibility. And the third is that the prosecutor got into the witness box and pointed at Mr. Foxworth while arguing that MF was credible during her rebuttal argument. So turning first to the 431B error.  The defendant did not testify. Now, Rule 431B encapsulates four foundational principles and premises of criminal law. I think the principles that we're all very familiar with, but the Supreme Court rule and people be there say that for lay people on the jury, they need to be told each of these four principles, and they need to affirmatively show that they both understand and accept each principle. These are the presumption of innocence, the burden on the state to prove guilt beyond a reasonable doubt, the fact that the defense does not require to put on any evidence, and finally, and perhaps most importantly in this case, the fact that the defendant's failure to testify cannot be used against them. Now, the rule mandates there be a specific question and answer process, and as I already said, that jurors show both that they understand and that they accept each precept. And the rule is specifically designed to avoid giving broad statements of law followed by general affirmations that jurors can follow the law. Here, when the court specifically questioned jurors on these principles, the court asked jurors whether they disagreed or quarreled with the principles, but the Supreme Court has already said specifically that this is insufficient to get a juror understanding. Now, the state points out that before the court began questioning, he told the jurors that they needed to raise their hand if they didn't understand the issues of law that were coming at them, and the court then asked four questions unrelated to 431B principles, at one point asking for both understanding and accepting, and at other times asking for quarreling or disagreement. And the problem is that when the court got to the specific 431B questions, he only gave jurors an opportunity to specifically respond to one question, and this question always went to acceptance and not to understanding. And I think both 431B and the cases, Thompson and Lovington, that we cite are very clear that there needs to be a specific response on juror understanding, and here we just don't have that. Was there, on the acceptance part of it, that's not an issue, though? The jurors affirmatively say they accepted the four principles? We're willing to say that asking about disagreement or quarreling is sufficient to ask about acceptance, but a second problem that we have is that principles 3 and 4 were combined, so the jurors were not specifically asked, as a separate matter, do you understand and accept that the fact that he does not testify cannot be used against him? So we're objecting to the lack of questions on understanding, but we're also objecting to the failure to separate those last two principles. And the problem with combining the principles is that I believe it obscures what the issue is. And again, for attorneys that hear these principles all the time it may feel intuitive that the defense not being allowed to present, not being required to present evidence, also means the defense does not have to testify, it can't be used against them. But in Zehr, and in this case, and I think in Mueller it was an issue, the Fifth District case I had in the briefs, where that right not to testify and the fact that it can't be used against you is a counterintuitive fact. And for Lager, I think it's very important that they be asked, both that they understand and that they accept it, because it's a difficult precept to accept in some cases. And I think this case is a great example of where it might be hard for a juror to accept they cannot use that fact against him. Here it was a paramount concern because conviction, it was essential to conviction that jurors judge MS credibility and her trial testimony. And you have in the rebuttal argument the prosecutor in a way emphasizing the fact that Mr. Foxworth did not take the stand because the prosecutor got into the witness stand and sort of announced, you know, MS sat here, she told you and you should believe her when she accused that man. And I think that had the effect of visually emphasizing, MS took the stand, he didn't take the stand, isn't that enough to tip the case for at least one conviction? But of course it's not, because the fact that he did not take the stand can in no way, shape, or form be used against him. And I think in a case like this where it's absolutely vital that jurors understand, both understand and accept the fact that that cannot be used against him, this court shouldn't be satisfied with the record that it has. Here, the Rule 431B of managements don't give this court the clarity that you should demand when affirming someone's first felony conviction. Now we're arguing this is plain error based on the closest of the evidence. We've cited the cases on not relying on only the complainant's accusations. There's no physical evidence here. There is no confession at any point. Mr. Boxworth has always protested in this sense, including when spoken to by police. And there's no corroborating witness who saw any bits of abuse. So in a case like that, while surely that's sufficient to go to trial, it's not overwhelming evidence such that an error like this should stand. Now this isn't the sole error that affected jury selection. The prosecutor used Wadhir to both preview and argue her theory about MS credibility. And Wadhir is meant to be a neutral process which ferrets out bias. It is not a first opportunity to predispose the jury to your theory. And in fact, using it in this way undermines the very goal of Wadhir, which is to select an impartial and an open-minded jury who doesn't know either side's theory yet. Here, the prosecutor used a parade metaphor as a meditation on memory and storytelling. She previewed her argument as to why MS was credible, despite the fact there were multiple changes in her story as she told it to different people. Telling me during this entire meditation there were no questions about juror bias. And this precise image was revisited during her level argument. Now in Reinhart, the Supreme Court has clarified that specific questions which are tailored to the facts and serve as a preliminary argument are impermissible during Wadhir. It's the more general questions that go to bias, that even when inartfully done, can be appropriate in Wadhir. In Faulkner, this court's case, this court warned that unacceptable emphasis is not allowed, even where a question that goes specifically to an area of law, specific to the case, might be appropriate. In Faulkner, this court approved of a single question to determine whether jurors could follow what might be an unexpected area of law, which is that circumstantial evidence can prove purpose-delicty. It was one question among other questions, and the court said, well, this one's okay. That's not what we have here. Here we have pages of the prosecutor going through an image on why memory is a tricky thing and why the fact that storytelling changes over the course of multiple tellings doesn't mean that you're a liar. And that's really beautiful persuasive imagery for a closing argument, but it is not appropriate during Wadhir. The defense preserved an objection to this parade imagery, so the state would need to show that this improper questioning was harmless beyond a reasonable doubt, and in a case that's closed, I don't believe they can meet that standard. The prosecutor also asked at the end of Wadhir that jurors with special expertise affirm whether trauma victims all react to something in the same way. This was not objected to, but I think it's worth bringing to this court's attention, given the way it works together with other areas in the case, to be reviewed under the plain error doctrine. The prosecutor had pulled out that certain jurors had experience working with populations who might be victims of sexual trauma, and at the end of Wadhir, the prosecutor directed questions to just those jurors and asked whether they all respond to abuse in the same way, and if they do respond in the same way, raise your hand. So the prosecutor didn't ask anything about bias. All she did was draw out the fact which she knew she would be eliciting from an expert witness during her case-in-chief, which is the fact that trauma victims don't all respond in the same way. This was elicited in the case-in-chief to help bolster and explain MF's credibility, despite the fact that she appeared calm in her video, and while that's completely appropriate during evidence, it's inappropriate during Wadhir, and it served no legitimate purpose in the Wadhir process. And finally, as I've already mentioned, this is a case where we have the prosecutor taking the witness stand, but... I have an opportunity for rebuttal. May it please the court, counsel, my name is Sharon Shanahan, I represent the people of the state of Illinois. I hope you can hear me all right, because I've had some surgery that kind of prevents me from talking very well. I can hear you. Great. We're on a roll then. As to the facts of this case, first of all, let's start with the alleged 431B error. We have a judge here who said, and this is a direct quote, so I'm going to give you the premise of the law. If you don't understand it, raise your hand. I'll try to explain it in more detail. And if you disagree with it, then I need to know. If you don't raise your hand, I will assume that you understand it and that you agree with it. Then he talks about a couple of other premises, maybe three, I think, and then goes into the 431B premises. Counsel, do you think that's a problem, the fact that he maybe set the stage for the acceptance and understanding, but then he talks about some other areas, like you said, maybe three areas before he gets to the zero? No, Your Honor. Both this court in Wallace and the Wilcox court both noted that timing in between the admonishments and the giving of the admonishments is, I mean, if it was three days later, but to say, and I'm sorry, I can't bring to mind exactly what the questions were, but they were very basic premises that you have to have a unanimous verdict or something like that. And they were brief, and as I said, they were just kind of like, I believe, three of them. And as I say, both this court said that brief elapsed time between the discussion of the premises and the questioning of the zero premises does not violate Rule 431B. That's Wallace. And then Wilhite noted that the timing of the court's questioning had no bearing on the juror's opportunity to respond as to whether they accepted and understood the four zero principles because the prospective jurors had not yet been sworn to serve in the case. And I think we have to remember the adage, the off-stated premise, that jurors do not leave their common sense at the door. If they're told, if you don't understand, raise your hand. If you don't accept, raise your hand. If I don't seem to raise hands, I'm going to presume you understand and you accept. And he asked question number one and question number two and question number three, and then he gets to question number four, and suddenly we're thinking that the jurors forgot about what the judge told them. So the state's first premise is that there was no error. Working solely on the premise that should this court decide there was error, then the evidence that the defendant touched the victim's breast was not so closely balanced that that alleged barbier issue alone severely threatened to tip the scales of justice against them. Now, I don't think we can discuss this issue without discussing this very recent Supreme Court issue case of People v. Seve. Seve is cited in the defendant's reply brief. I have to admit, when I read Seve and I read this sentence, the issue before us does not involve the sufficiency of close evidence, but rather the closeness of sufficient evidence, I thought. What? I read it over and over and over again, but I spent a lot of time with Seve, and certainly it applies here. I think it applies to a limited number of cases, but certainly where there is an alleged 431B issue, then I think Seve definitely applies. The first thing we have to understand, that language that I just read to you, is simply saying that there's a difference between reviewing Jackson v. Virginia's sufficiency of evidence cases and unreserved instructional error in close cases. And here, the defendant in his reply brief concedes that there was sufficient evidence to convict. First, there has to be an error, and Seve found an error in 431B. State has just argued to the view that there was no 431B error in this case. But... But there was no physical evidence, correct? In Seve? No, in this case. Oh, I disagree with that entirely, because, well, it's physical evidence. Okay, I'll go with physical evidence. But corroborating evidence is the word used in Seve. Seve said there had to be, if there was no corroborating evidence, if it was just a he said, she said. But our Supreme Court has said in People v. Bowen, that after first saying a child's initial complaint of sexual abuse has been characterized as often striking in its clarity and ring of truth, they went on to say that for this reason, an outcry statement pursuant to Section 115.10, and here again I'm quoting, can constitute a highly valuable and trustworthy form of corroborative evidence. That's the purpose of the 115.10 hearing, is to determine whether this is corroborative evidence. This is not just... Well, does it matter that you had two acquittals on this case? I think it's absolutely crucial. I think that makes it even more credible that they convicted on this issue. This proves that this jury knew that if the defendant didn't testify, they didn't have to hold it against them, because the defendant didn't testify, and they found you not guilty on two instances. It proves that they knew that the state had the burden of proof and had the proof to defend guilty beyond a reasonable doubt, because they found that the state didn't. I mean, this is a jury, and this goes to the length of deliberations and even the deadline. This is a jury that knew what it was supposed to do, understood its instructions, and did what it was supposed to do. What happened on this account that there was no verdict? The jury split. We know that from the jury note, and it was putting her hand on his penis. And, I mean, on any split verdict, some jurors thought there was enough evidence to convict, some thought there wasn't, but the thing is, it doesn't matter as far as the finding in this case. We're not concerned as far as closeness of evidence, as far as whether the evidence was so closely balanced that the error threatened to tip the scales of justice against the defendant. The only claim we're concerned about is whether he touched her breast. And the thing is, it's real easy to read Sebi and say, what I just said, it does not involve sufficiency of close evidence, but rather the closeness of sufficient evidence. Well, it's not just close evidence, because Sebi cites Tuharin. Sebi even says the same thing to Tuharin, which is, it's not just close. The evidence doesn't have to just be close. It has to be so closely balanced that the alleged error severely threatened to tip the scales of justice against him. Well, what about the prosecutor taking the witness's stand and commenting on the- The prosecutor, first of all, this was rebuttal. The defense counsel had spent her arguments saying that these things, if these things had happened to the victim, she had an opportunity to put a stop to it, but she didn't, and that means it didn't happen. She said, it's our position that the more times the child tells the truth in the same way, the more likely it is that it is the truth. And then she went on to point out, in regard to the, particularly the other charges, that Michaela told some varying charges. So we now have the prosecutor- You can finish your thought. Making, sitting in the chair, saying three sentences. She sat right here, ladies and gentlemen. She told you what the defendant did to her. The people submit to you that she testified presumably it was not inconsistent. And she got up again, and that's all. That, even if this is error, and only the one case cited by the defendant, which I might even try to pronounce- I wouldn't even think of that either. That's a collection of random consonants and vowels. It sounds Greek or Heroian. But anyway. And I do think that Justice Burkett, a former prosecutor, wrote this decision, and he is very strong in his condemnation of that conduct, and even says that the court had a duty to object and stop that conduct from being punished. Well, I know I'm out of time, so I'm going to try and make this a really short answer. But ask the question so we can respond. As I say, as opposed to that case, where not only did he sit in the chair, he gave a soliloquy taking the part of the victim for pretty much the entire- But he criticized the state for vouching, and isn't that what happened here? I think when you say an entire soliloquy on the part of the witness, as opposed to responding to invited comments in rebuttal, she said, don't believe her. She told a different story every time. What she said was correct. She said three sentences in the witness chair, and she sat down. If this is error, then I still don't think it can be said. The only way you can reverse is if this action resulted in substantial prejudice to the accused, such that absent this action, the verdict would have been different. That's my response, is that those three sentences saying things that the prosecutor was allowed to say, just because it was in the witness stand with those three sentences, is not such a serious error that absent that action, the verdict would have been different. Thank you, counsel. Rebuttal. So turning first to whether or not there was forfeiting would be error. In people who do Wilmington, we go through this in the reply brief. You had a trial court, and the court and the parties agreed that there was error because there was no questioning or understanding. And there before the trial court went into its questioning and said, quote, it is absolutely essential as we select this jury that each of you understand and embrace these foundational principles. And then the court stated all four principles, and the court made that statement, and then went through them again, asking after each one, do you accept or do you disagree, but didn't ask about understanding. And even there, the Supreme Court and the parties agreed that's not sufficient to get that specific response and understanding, and I think the same is true here. And we also go through in the reply brief the cases relied on by the state in saying that there was appropriate questioning so that there is no error. They predated Thompson and Wilmington, and those two Supreme Court cases really emphasized how vital these 431B principles are and how important it is to ask about each of them to get understanding and to get acceptance. You know, the state says jurors use their common sense, but if we were allowed to use that in affirming 431B errors, if you ask a juror do you accept this principle, I think common sense would say, surely they understand it if they say they can accept it, but the reality is the Supreme Court starting in Zaire and now in these 431B cases has said these principles are so important and so counterintuitive for the layperson that we need to get them to say both. Yes, I understand. Yes, I accept, whether through raised hands or otherwise. So I think there is error in this case. You know, the state goes through why they believe the evidence is overwhelming, and they point to the fact that corroborating evidence that there was some sort of outcry statement. I think there are a couple of problems, and again, we go through these in the reply brief. We don't know what the initial outcry statement was. The complainant changed her story about who she spoke to first, which sister she spoke to first, and there were other high school friends that she spoke to that we have no idea what she told them. She did testify in this trial, didn't she? She testified, yes. How old was she at the time of the trial? At trial, there were certain little things she changed, one of them being that she said she spoke to a different sister first than she had told. How old was she at the time of the trial? Oh, how old was she? I don't remember off the top of my head. I think she was 13. She was a teenager, but I don't remember a specific age. So, you know, this Court can dig into the specific details of the evidence here, and I think it's not enough to be not closely balanced or overwhelming evidence, but I also think it's not necessary to go that deeply in because we have a people-be-voting case that goes through that analysis for this Court and says, when you're talking about just weighing a bunch of accusations from the same person without any outsider that can corroborate it, or any physical evidence that can corroborate it, yes, you can go to trial, but that's not the kind of overwhelming evidence where we can let error stand before affirming a felony. The same points to the acquittals, and I think it's important to remember that what those acquittals and the jury hanging mean is that the jury did not believe the complainant was credible in all of her accusations. And then, for a brief moment, when the prosecutor took the witness stand, we have that case that we can't pronounce, but we also have plenty of Supreme Court cases saying it's very important that you don't confuse the role of the parties in a jury trial, and it's particularly important that the prosecutor not use the, you know, special power of their office when they're arguing before a jury because there is a special power in being the state who's fighting for the victims. So you have to be very wary of not using that weight and that power when trying to meet a reasonable doubt standard because the jury is going to be swayed by it. And it doesn't matter that it was three sentences in the witness stand because there were three vital sentences. There were sentences vouching for MS credibility while pointing to the man who didn't take the stand, which he's absolutely allowed to do. In a case that's this close, I think it's very important that a jury who has not been influenced by theatrics, a jury who doesn't have any questions about whether or not they understood that Mr. Foxworth didn't have to testify, it's important that we have an impartial, well-instructed jury finding that the state has met their burden on every issue before we label Mr. Foxworth a felon. Are there any questions from the panel? Thank you. Thank you, counsel. The court will take this matter under advisement and issue the decision in due course. The court will stand in recess until we come back for the 10-card case. All rise.